# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ROBERT PARKER

v.

LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS,
ET AL.

CIVIL ACTION

NO. 18-1030-JWD-EWD

## RULING AND ORDER

This matter comes before the Court on two motions. The first is the *Motion to Dismiss Claims for Misjoinder, or in the Alternative, to Sever and Transfer* (Doc. 35) filed by Defendant Warden Ray Hanson ("Hanson"). Plaintiff Robert Parker ("Plaintiff" or "Parker") opposes this motion. (Doc. 41.) Hanson filed a reply. (Doc. 42.) The second motion is the *Motion to Dismiss for Misjoinder*, *or in the Alternative, to Sever and Transfer* (Doc. 44) filed by Defendant LaSalle Corrections, LLC ("LaSalle"). Parker also opposes this motion. (Doc. 46.) LaSalle did not file a reply. Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motions are denied.

I.  **Relevant Factual Background[1]**

Robert Parker is a person of the full age of majority domiciled in New Orleans, Louisiana. (Doc. 26, ¶11.) On December 21, 2016, Plaintiff was arrested for possible Violation of Protective Orders by the New Orleans Police and held in Orleans Parish Prison. (*Id*. ¶21.) On January 4, 2017, the Orleans District Attorney refused charges for possible Violation of

---

[1] The following factual allegations are taken from Plaintiff's Amended Complaint (Doc. 26.) They are assumed to be true for purposes of this motion.

Protective Orders. (*Id*. ¶23.) On March 27, 2017, Plaintiff "self-revoked his probation" in Orleans Criminal District Court. (*Id*. ¶24.) Plaintiff was sentenced to two years for revoking his probation, and he was given good time credit and credit for time served that would reduce the number of days in prison. (*Id*.) Following Plaintiff's self-revocation, on March 30, 2017, he was transferred from Orleans Parish Prison to Louisiana Department of Public Safety and Corrections ("DOC") custody. (*Id*. ¶25.) Plaintiff spent time at two other detention centers before he arrived at Richwood Correctional Center either on May 30 or August 29, 2017. (Doc. 26, ¶25.) Ray Hanson was the Warden of Richwood Correctional Center. (*Id*. ¶14.)

Plaintiff's original Time Computation & Jail Credit report was compiled on May 4, 2017, by a DOC staff member. (*Id*. ¶26.) This report listed Plaintiff's "Must Serve date" as October 9, 2017. (*Id*.) Plaintiff's Time Computation & Jail Credit report was reviewed on or around September 2017 by a Time Computation Specialist at David Wade Correctional Center. (*Id*. ¶27.) During this review, Plaintiff alleges that the release date was struck through and the letters "UNSORP" were written above the struck date. (*Id*.) This acronym is used in reference to residency plans for the release of sex offenders. (Doc. 26, ¶27.) Part of the residency plan for the release of sex offenders requires that he provide two physical addresses of friends and/or family where he could live upon his release. (*Id*. ¶28.) Plaintiff alleges that he was never informed by DOC, or convicted of, being a sex offender. (*Id*.)

Plaintiff contends that he made a request to discuss this issue with Hanson and others at the DOC. (*Id*. ¶29.) Further, Plaintiff states that he submitted two additional Inmate Request Forms on September 4, 2017, where he asked to speak with Hanson about the matter of his release date or sex offender status. (*Id*. ¶30.) Both additional requests were marked as "handled" on the day that they were submitted. (Doc. 26, ¶30.)

On October 9, 2017, Plaintiff was not released. (*Id*. ¶31.) On November 6, 2017, Plaintiff submitted another Inmate Request Form stating that he provided two additional addresses,[2] and the November 6 Request was marked as "handled" on November 9, 2017. (*Id*. ¶34.) Again, Plaintiff contends he submitted another Inmate Request Form on November 26, 2017, in which he asked that the street addresses he previously provided be included in his record. (*Id*. ¶35.) This Request was marked as "handled" on November 30, 2017. (*Id*.)

On August 24, 2018, Plaintiff's Public Defender attempted to contact the DOC to inquire about Plaintiff's release date. (Doc. 26, ¶36.) On September 7, 2018, Plaintiff hired a different attorney who contacted the DOC on Plaintiff's behalf. (*Id*. ¶37.) Finally, on September 10, 2018, Plaintiff was released. (*Id*. ¶39.)

## II. Motion to Sever Standard

Rule 21 of the Federal Rules of Civil Procedure states that "Misjoinder of parties is not a ground for dismissing an action." Further, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

The Fifth Circuit has explained "Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (per curiam) (citation omitted). Rule 20(a)(2) provides:

> Persons…may be joined in one action as defendants if: (A) any right to relief asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

---

[2] In Plaintiff's Complaint he states he provided the two additional addresses, but Plaintiff insists that he should not have been required to provide the addresses. (Doc. 26, ¶33.)

3

Therefore, "Courts have described Rule 20 as creating a two-prong test, allowing joinder of [parties] when (1) their claims arise out of the 'transaction, occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims." *Acevedo*, 600 F.3d at 521 (citations omitted). The Fifth Circuit found "as long as both prongs of the test are met, 'permissive joinder of [parties]…is at the option of the [parties].'" *Id*. (quoting *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 n.11 (5th Cir. 1995)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130 (1966) ("Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.")

"When applying the two-prong test, the Court considers whether there is a logical relationship between the claims and whether there is any overlapping proof or legal question." *Peters v. Singh*, No. 16-842, 2017 WL 5128750, at *2 (M.D. La. Nov. 6, 2017) (citing *Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 WL 274518, at *1 (E.D. La. Mar. 20, 2001)). Additionally, "[t]he Court must also consider whether settlement or judicial economy would be promoted, whether prejudice would be averted by severance, and whether different witnesses and documentary proof are required for separate claims." *Id.* Thus, "even if this [two-part] test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo*, 600 F.3d at 521 (citation omitted). "[D]istrict courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiff['s] claims." *Id*. at 522 (citation omitted).

Put another way, the Eastern District applies this standard as a five-factor test to determine whether severance is appropriate:

> (1) whether the claim arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and, (5) whether different witnesses and documentary proof are required for separate claims.

*Melancon v. Town of Sorrento*, No. 13-745, 2015 WL 410866, at *5 (M.D. La. Jan. 29, 2015) (citing *E. Cornell Malone Corp. v. Sisters of the Holy Family, St. Mary's Acad. of the Holy Family*, 922 F. Supp, 2d 550, 561 (E.D. La. 2013)); *see In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014) (citing the five-factor test positively without formally adopting it.) "Courts in this circuit have balanced these factors on a case-by-case basis to determine if severance is appropriate." *Gilmore v. Office of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*, No. 14-434, 2015 WL 5680370, at *1 (M.D. La. Sept. 25, 2015); *see also Melancon*, 2015 WL 410866 at *5 n.3 ("The fourth factor is neutral in this case, leaving four out of the five factors weighing in favor of severance."); *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854, 2015 WL 500876, at *3-4 (M.D. La. June 25, 2015) (finding most convincing the defendants' arguments that the fifth factor weighed against severance of two consolidated matters.)

### III. Parties' Arguments

#### A. Defendants' Argument

Hanson (Doc. 35) and LaSalle (Doc. 44) have both filed a *Motion to Dismiss Claims for Misjoinder, or in the alterative, to Sever and Transfer*. The Court finds that Defendants' arguments are virtually identical, and thus, the Court will address them simultaneously.

The crux of Defendants' argument is that Plaintiff has conflated the parties and misplaced the fault. (Doc. 35-1 at 3; Doc. 44-1 at 3-4.) Specifically, Defendants argue "[a]s Hanson was

claimed to have been employed by LaSalle, a private prison contactor, he lacked the power and authority to determined Parker's release date or to release him on his own." (Doc. 44-1 at 4.)

Defendants contend that Plaintiff's claims against Hanson and LaSalle and those against DOC Defendants arise from separate and logically distinct transactions and occurrences. (Doc. 35-1 at 4; Doc. 44-1 at 4.) Defendants argue that Plaintiff is accusing all of the Defendants as either failing to calculate his release date correctly or failing to correct an error concerning his release date. (Doc. 35-1 at 5; Doc. 44-1 at 5.) Therefore, since Hanson and LaSalle did not have the authority to calculate Plaintiff's release date under Louisiana law, they could not be involved in the transaction or occurrence at the heart of Plaintiff's allegations. (Doc. 35-1 at 5; Doc. 44-1 at 6.) Additionally, Defendants assert that "[p]roper joinder would require that Parker show some concerted action between the DOC and LaSalle, through its alleged employee, Hanson." (Doc. 44-1 at 6.) Defendants state that they merely acted as a messenger between Plaintiff and DOC for Plaintiff's complaints, and thus, without alleging further actions, Plaintiff has misjoined them to the suit. (Doc. 35-1 at 6; Doc. 44-1 at 6.)

Defendants further argue that because joinder was improper, the Court should either drop Plaintiff's misjoined claims against Hanson and LaSalle or sever and transfer the claims to the Western District of Louisiana. (Doc. 35-1 at 6; Doc. 44-1 at 7.) Defendants first implore the Court to simply drop the claims against LaSalle and Hanson and allow Plaintiff to re-file his claims elsewhere. (Doc. 35-1 at 7; Doc. 44-1 at 7.) Alternatively, Defendants urge the Court to sever the claims and then transfer the claims to the Western District. (Doc. 35-1 at 7; Doc. 44-1 at 7-8.)

After going through the public and private factors a court should consider when transferring venue, Defendants argue that transfer to the Western District, Monroe Division

6

would be appropriate. (Doc. 35-1 at 7-9; Doc. 44-1 at 8-9.) Regarding private factors, the Defendants highlight that Hanson and others who were employed at LaSalle are located in Ouachita Parish, and therefore it would be easier and more cost effective for a trial to be held in Monroe. (Doc. 35-1 at 8-9; Doc. 44-1 at 9.) Further, if witnesses are unable to appear, Defendants argue that the Middle District may not be able to issue subpoenas because of the distance. (*Id.*) Regarding public factors, Defendants contend that the citizens of Central Louisiana have a strong interest in determining whether its prison facilities unlawfully detain inmates. (Doc. 35-1 at 9; Doc. 44-1 at 9.)

### B. Plaintiff's Response

Initially, Plaintiff requests leave to amend his complaint to include a more thorough explanation of the theories of recovery asserted and more specific facts that give rise to the relief requested.

Plaintiff then contends that Defendants have misinterpreted and over-simplified his complaint. Specifically, that "[m]iscalculating the plaintiff's release date is only one of the plaintiff's arguments."[3] (Doc. 41 at 3.) Plaintiff argues that his claim is for being detained beyond his release date and that miscalculation is only part of the claim. (*Id.*) Although state law might not place a privately-run prison or its warden in charge of calculating a release date, federal law states that any jailer has a duty to effect the timely release of a prisoner. (*Id.* at 3-4.) Further, Plaintiff argues that his repeated requests to discuss his release with the warden show how Hanson and LaSalle are connected to his claim. (Doc. 41 at 4; Doc. 46 at 4.) In fact, Plaintiff contends the defendants must be connected because he could not contact the DOC

---

[3] However, in Plaintiff's Opposition to LaSalle's Motion, Plaintiff states, "there was no 'miscalculation' and Plaintiff's release date was properly calculated and stated on all prison forms. (Doc. 46 at 3.) Should Plaintiff amend his complaint, he should clarify this ambiguity.

7

without using LaSalle's employee, Hanson, as an intermediary. (Doc. 46 at 4.) Plaintiff claims that by failing to act as an intermediary, LaSalle and Hanson breached their legal duty and were responsible for his over-detention. (*Id*. at 5.) Additionally, Plaintiff contends that LaSalle and Hanson's requiring him to provide additional residence addresses led to him being falsely imprisoned. (*Id*.)

Further, Plaintiff argues that the logical relationship test is meant to be broadly interpreted by Courts to allow related claims against different defendants to be joined. (Doc. 41 at 5.) Plaintiff asserts that his claim satisfies the logical relationship test because "[a]ll the defendants' actions or omissions contributed to the plaintiff's false imprisonment." (*Id*.) Specifically, Plaintiff maintains that all defendants knew he was "detained beyond his release date," "were obligated to ensure his timely release," and "were under a duty to investigate and process the plaintiff's complaint promptly." (*Id*.) For all these reasons, Plaintiff argues that his claims satisfied the logical relationship test.

Additionally, Plaintiff asks the Court to deny severance under its discretion under Federal Rule of Civil Procedure 42. First, Plaintiff argues there is a common question of law or fact. (*Id*. at 6.) Second, Plaintiff contends that severing the case would be more costly to plaintiff, defendants, witnesses, and the court system because it would create two separate trials with significant overlap. (*Id*. at 6-7.) Finally, Plaintiff argues that joinder is not prejudicial because Hanson will have to testify in both trials if severance occurs and costs will be more evenly distributed between more defendants with a single trial. (*Id*. at 7.)

### C. Defendant's Reply[4]

Hanson reiterates that he had no authority or power to release Plaintiff or re-evaluate his release date provided by the DOC. (Doc. 42 at 1.) Therefore, Defendant argues, he could not have committed any act logically related to an alleged error by the DOC. (*Id*.) Further, Hanson cites *Bryon v. Jones*, 530 F. 2d 1210 (5th Cir. 1976), which he argues stands for the proposition that the duty of jailer, under federal law, to timely release prisoners must be understood in light of the jailer's actual authority to effectuate that release. (*Id*. at 2.) Further, Hanson repeats his assertion that Plaintiff is conflating the defendants' authority in this case, and therefore, Hanson's conduct was fundamentally different from other employers. (*Id*.)

Additionally, Hanson argues that severance under either Rule 21 or 42 would be appropriate. Hanson argues that the lawsuits should be severed because although both lawsuits would deal with Plaintiff's imprisonment, the different questions against different defendants would be prejudicial to Hanson. (*Id*. at 3.) Specifically, "the question at issue in the suit against Hanson will be 'was Hanson deliberately indifferent in following DOC instructions' while the question against the DOC will be, 'how was Parker's release date miscalculated and why was it not modified sooner.'" (*Id*. at 4.) Therefore, Hanson contends, the suits should be severed because of the risk of prejudice and confusion. Hanson illustrates that a jury could overemphasize his role as the warden because wardens are "concrete figures" while the DOC is a bureaucratic agency. (*Id*.)

### IV. Analysis

Preliminarily, the Court notes that it is not evaluating whether Plaintiff stated a claim for which relief may be granted. Defendants only requested this Court to consider whether joinder

---

[4] Defendant LaSalle did not file a reply.

was proper or whether severance and transfer was appropriate. Thus, this ruling should not be construed as determining whether Plaintiff has asserted a valid claim against either Hanson or LaSalle.

First, the Court must consider whether there is "any right to relief asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences." Fed. R. Civ. P. 20(a)(2)(A). This Court finds that Plaintiff's claims against Hanson, LaSalle, and the DOC do stem from the same transaction or occurrence. Hanson and LaSalle's characterization of Plaintiff's claim as failing to calculate his release date or correct the mis-calculation is too narrow. Plaintiff has brought a suit for all acts that led to his alleged over-detention. Therefore, as Plaintiff has alleged, Hanson and LaSalle's failure to address his Inmate Release Forms is logically related to his over-detention and constitutes the same transaction or occurrence.

Second, the Court finds that "there is at least one question of law or fact linking all claims." *Acevedo v. Allsup's Convience Stores, Inc*. 600 F.3d 516, 521 (5th Cir. 2010) (per curiam). As previously stated, at the heart of Plaintiff's complaint is his over-detention. Therefore, proving whether Plaintiff was over-detained will be central to claims against Hanson, LaSalle, and DOC. Specifically, whether Plaintiff should have been released on October 7, 2017, as he claims, will be of prime importance. Additionally, the issue of Plaintiff's Inmate Request Forms will be critical to claims against Hanson, LaSalle, and the DOC. The Court also notes that all questions of law or fact are not required to be similar. Therefore, Defendants' argument that they were without power to calculate Plaintiff's initial release date is not persuasive.

Although the Court has found two-prong test under Rule 20 to be satisfied, judicial economy, aversion to prejudice, and different proof requirements must also be taken into

10

consideration. *See Acevedo*, 600 F. 3d at 521. The Court finds that judicial economy would be promoted by allowing these claims to proceed together. Plaintiff's claims against Hanson, LaSalle, and the DOC are inherently connected, as Plaintiff has alleged that his complaints were not properly handled. Additionally, Plaintiff emphasizes that Hanson will already have to testify at both trials if severance occurs.

Regarding the final two factors—prejudice and different proof requirements—the Court notes that Hanson has made a compelling argument that the different questions at issue for himself and the DOC could lead to jury confusion. (Doc. 44 at 4.) Additionally, the Court observes that a jury may overemphasize Hanson's role because he is a concrete figure unlike the DOC, which is a government agency. (*Id.*) However, these two factors are not dispositive and can be mitigated through appropriate instruction.

In sum, this Court holds that severance is not appropriate at this time. The factors are split. While the first three factors weigh in favor of Plaintiff, the final two factors favor the Defendant. Therefore, the Court, in its discretion, will not sever the case. *See Gilmore v. Office of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*, No. 14-434, 2015 WL 5680370, at *2 (M.D. La. Sept. 25, 2015) ("While many of the above factors have been an extremely close call at this stage of the proceedings, with one factor in favor, two factors against, and two factors neutral, the Court declines to sever these cases.").

V.     **Leave to Amend**

Plaintiff has requested leave to amend his complaint. Specifically, Plaintiff requests the Court's permission to further specify his claims against Warden Hanson in regard to Hanson's duty to investigate and handle prisoner complaints. (Doc. 41 at 4.)

11

Federal Rules of Civil Procedure 15(a) "requires the trial court to grant leave to amend freely;" further "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted). However, "leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Jones*, 427 F.3d at 994. (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." (citation and internal quotation marks omitted).

*Id.* 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Boggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Applying this standard, the Court will grant Plaintiff's request for additional amendment. In addition to Plaintiff's request, he should also account for the inconsistencies observed by this Court and correct them in his future complaint.

In addition, the Court advises Plaintiff of his obligations under Rule 11 of the Federal Rules of Civil Procedure. Plaintiff should have a good faith basis in law and fact for any claim he makes. Fed. R. Civ. P. 11(b)(2), (3). While the Court has no reason to doubt Plaintiff's adherence to this rule, the Court issues this reminder as a precaution.[5]

## VI. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' *Motion to Dismiss Claims for Misjoinder, or in the Alternative, to Sever and Transfer* (Doc. 35 & 44) are **DENIED**. Plaintiff is given twenty-eight (28) days in which to amend the operative complaint to add specificity and cure any deficiencies therein.

Signed in Baton Rouge, Louisiana, on October 10, 2019.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[5] The Court also advises all parties to refrain from personal attacks in briefing, as it is neither helpful nor becoming of their role as officers of the Court.